**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 2 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES L. SHUMATE,

      Plaintiff-Appellant,

v.

PACIFIC INSURANCE COMPANY, a
California corporation,

      Defendant-Appellee,

--------------------------------------------------

JOHN D. GARRETT,

      Intervenor-Appellant.

Nos. 97-4099, 97-4100
(D.C. No. 95-CV-374C)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **MCWILLIAMS**, and **ANDERSON**, Circuit Judges.

      Alleging breach of an attorney malpractice insurance contract, James Shumate

brought this action against Pacific Insurance Company. Mr. Shumate contended Pacific

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

had wrongfully disallowed coverage for liability incurred by Shumate from an action brought by a former client, John Garrett. Mr. Shumate also alleged bad faith in Pacific's handling of Mr. Shumate's claim. The district court granted summary judgment for Pacific. Mr. Shumate and the intervenor, Mr. Garrett, appeal. We affirm.

In June 1984, Garrett hired Shumate to help obtain payment for work Garrett had performed on a hotel. Shumate recorded, on June 4, 1984, a mechanics lien on Garrett's behalf against the hotel but did not file a *lis pendens*. Utah law requires lien claimants to file a *lis pendens* within one year from the date work is completed unless the party against whom the lien is brought has actual knowledge of the claim. Failure to file the *lis pendens* renders the lien void. Utah Code Ann. § 38-1-11 (1974).[1]

---

[1] Section 38-1-11 provides:
(1) A lien claimant shall file an action to enforce the lien filed under this chapter within:
> (a) twelve months from the date of final completion of the original contract not involving a residence as defined in Section 38-11-102; or
> (b) 180 days from the date the lien claimant last performed labor and services or last furnished equipment or material for a residence, as defined in Section 38-11-102.

(2)      (a) Within the time period provided for filing in Subsection (1) the lien claimant shall file for record with the county recorder of each county in which the lien is recorded a notice of the pendency of the action, in the manner provided in actions affecting the title or right to possession of real property, or the lien shall be void, except as to persons who have been made parties to the action and persons having actual knowledge of the commencement of the action.
> (b) The burden of proof shall be upon the lien claimant and those claiming under him to show actual knowledge.

The hotel eventually filed a petition for bankruptcy relief, and the bankruptcy court ordered the hotel to be sold, with valid liens attaching to the sales proceeds. In 1988, the construction lender filed an objection to Garrett's lien because no *lis pendens* had been filed.

On October 28, 1988, Shumate wrote a letter to his associate, Keith Henderson, discussing the construction lender's objection. In the letter, Shumate argued the lender was being inconsistent in its claims, as the lender actively supported the payment of other contractors who also had not filed *lis pendens*. In addition, Shumate speculated "the records of the title companies . . . would show actual notice of our lien and would also show notice of the action filed" and suggested that the failure to file the *lis pendens* could be defended on that ground.

In January 1989, Henderson initiated a bankruptcy court action to establish the priority of Garrett's lien. That same month Shumate applied for Lawyer's Professional Liability Insurance with Pacific Insurance Company. In his thirteen years of practice, Shumate had never before carried malpractice insurance.

Pacific Insurance accepted Shumate's application. In a section labeled "Territory and Policy Period," the policy provides:

> This policy applies to acts, errors, or omissions occurring anywhere in the world subsequent to the [effective date], provided that
>   (a) the claim is first made against the insured and reported to the Company during the reporting period, and

(b) the insured at the effective date of the policy period did not know or could not have reasonably foreseen that such acts, errors, or omissions might be expected to be the basis of a claim . . . .

The policy period was March 3, 1989-March 3, 1990.

In November 1989, Shumate applied to renew his policy. The policy period for the renewed policy was March 3, 1990-March 3, 1991. The 1990-91 policy used the same language to specify the covered conduct; that is, acts, errors or omissions occurring anywhere in the world, provided a claim based on the conduct is filed during the effective period and the insured "did not know or could not have reasonably foreseen that such acts, errors, or omissions might be expected to be the basis of a claim."

In January 1991, after Shumate was appointed a judge in Utah State Court, he asked Pacific about obtaining "tail coverage" for acts, errors or omissions occurring during the policy period March 3, 1989-March 3, 1991.[2] Shumate paid a one-time fee for tail coverage which took effect on March 3, 1991. The policy provided Shumate an unlimited discovery period, but left "[a]ll other terms and conditions of this policy . . . unchanged."

Meanwhile, Garrett's claim against the debtor hotel's estate was in jeopardy. The construction lender had filed a motion for summary judgment against Garrett based on the absence of a *lis pendens*. Henderson did not file a written opposition to the lender's motion and conceded at a hearing that he had not discovered any evidence which would

---

[2]Tail coverage provides insurance for acts, errors, or omissions which meet the policy requirements but allows an unlimited discovery period. Therefore, the insured would be protected for claims brought after the base policy had expired.

indicate the lender had actual notice of Garrett's claim. Although the bankruptcy court gave Henderson more time, he conducted no additional discovery and failed to respond otherwise. In June 1991, the bankruptcy court denied Garrett's claim.

In October 1991, Garrett's new counsel wrote to Shumate stating he had "concluded that the mechanic's lien filed on behalf of Garrett Drywall would have been enforceable but for the failure to record a lis pendens at the time the lien was recorded." Counsel maintained "the failure to record the lis pendens was the proximate cause of Mr. Garrett's inability to recover." Shumate forwarded this letter to Pacific and, on December 20, 1991, Pacific denied coverage on the claim because "the alleged acts, errors, or omissions occurred prior to your [policy's] retroactive date."[3]

On May 12, 1992, Garrett filed a malpractice action against Shumate and Henderson alleging that Shumate had "negligently failed to file a Lis pendens or to make the construction lender a party to the action as required by" Utah Code § 38-1-11; and "[f]or more than two years [from 1989 to 1991], neither Defendant Henderson nor Defendant Shumate caused any discovery to be performed in the adversary proceeding [in bankruptcy] to determine whether the construction lender had actual knowledge of the Garrett claim lien so as to avoid the effects of Utah Code Annotated § 38-1-11."

---

[3] The "retroactive date" was the effective date of the original policy, March 3, 1989.

On May 19, 1992, Shumate wrote Pacific, emphasizing that some of the allegations involved acts, errors, or omissions occurring during his coverage period and tendering defense of the claim to Pacific. Pacific informed Shumate it would defend the claim, but "reserve[d] the right to disclaim coverage of all or part of this claim, including the right to withdraw from the defense . . . ." Pacific hired counsel to handle the matter.

Pretrial settlement efforts proved fruitless. At some point, Garrett's counsel demanded $108,000 to settle the case, but this offer was rejected.[4] The jury found Shumate liable for malpractice, and Shumate informed Pacific he expected Pacific to pay the judgment against him, as well as attorneys' fees he paid on his own behalf. Pacific declined, and Shumate brought the present action.

In the district court, Pacific moved for summary judgment on the ground the claim was not covered by Shumate's policy. Shumate and Garrett filed cross-motions for partial summary judgment on the grounds Shumate had coverage on the Garrett claim and Pacific acted in bad faith in handling Shumate's insurance claim. The district court concluded the Garrett claim was not covered under the insurance policy because Shumate knew or reasonably should have known, as of the effective date of the policy, his failure to file a *lis pendens* might form the basis of a malpractice claim by Garrett. Because it held no

---

[4] Whether a $108,000 settlement offer was actually made is in dispute. But because it makes no difference to the outcome of this appeal, we assume it was made as contended by Mr. Shumate.

coverage existed under the policy, the court concluded it had no need to resolve Shumate's breach of contract or bad faith claims.  This appeal ensued.

The district court's written order states Pacific's motion for summary judgment was granted "[f]or the reasons set forth at the close of the hearing."  At the end of the hearing, the court made this statement:

> I reread a couple of the coverage cases.  I read very carefully, bearing in mind your translation, your interpretation of the subsection III(b) [of the insurance policy], which says that, "the insured at the effective date of the policy did not know or could not reasonably have foreseen," and bearing in mind your argument, I still find that there's no coverage, and therefore I grant defendant's motion for summary judgment.
>
> I find that the defendant knew or reasonably could have known that there would be a claim made against him due to his failure to timely file a lis pendens.  Notice was certainly given in August of 1988 when the lender filed an objection to Mr. Garrett's lien on the ground of no lis pendens, and Judge Shumate's knowledge is clearly shown by his letter of October 28th, 1988 to Henderson. And I believe that letter makes clear that he knew or reasonably could have foreseen a claim would be made.
>
> Although plaintiff may well have believed that there were defenses to a claim, and he may well have believed that the claim was without merit, that is not the issue. It's foreseeability or the reasonableness of foreseeing that a claim would be made.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *19 Solid Waste Dep't Mechanics v. City of Albuquerque,* No. 96-2177, 1998 WL 646876, at *2 (10th Cir. Sept. 22, 1998).  We review a grant or denial of summary judgment de novo.  *Id*.

The coverage provisions of Shumate's insurance policy are found in sections I and III.

Under section I, Pacific agreed to pay

> all sums which the insured shall become legally obligated to pay as damages, and all costs as defined, because of any claim or claims first made against the insured and reported to the Company during the reporting period caused by any act, error, or omission of the insured or any other person for whose acts, errors, or omissions the insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the insured's capacity as a lawyer.

Section III of the policy further explains, (1) the acts, errors, or omissions must occur "after the retroactive date" (in this instance, March 3, 1989); (2) the claim must first be made against the insured during the reporting period; and (3) "the insured at the effective date [must] not [have] know[n] or could not reasonably have foreseen that such acts, errors, or omissions might be expected to be the basis of a claim."[5]

Shumate contends the district court's ruling is erroneous "because Shumate's claim for coverage under his professional liability policy is not based on a claim against him for failure to file a *lis pendens* in 1984, but rather, is based on allegations of malpractice occurring during his policy period." The complaint Garrett filed against him, Shumate observes, avers acts, errors, or omissions which occurred *during* the effective date of his

---

[5] The parties disagree on the characterization of section III. Pacific claims this provision is a "precondition" which Shumate must demonstrate before triggering coverage and should therefore be interpreted according to its plain meaning. Shumate contends section III is an exclusion which must be interpreted strictly against Pacific in the case of ambiguity. Neither characterization affects the disposition of this case, but that advanced by Pacific is closer to the mark. Section III, labeled "Territory and Policy Period," sets the geographic and temporal scope of the coverage and contributes to a reasonable understanding of the policy's coverage. Additionally, the exclusions to the policy are contained in a separate section, prominently labeled: "EXCLUSIONS."

policies, namely Shumate and Henderson's failure to conduct discovery on the issue of actual notice and to file written responses to the lender's objection to the Garrett claim. Because Garrett's claim was based on conduct which occurred *after* his insurance took effect, Shumate argues, he could not possibly have known or foreseen the acts, errors, or omissions which would eventually form the basis of Garrett's claim.

Pacific takes the opposite tack. In support, it cites ***Taylor v. American Fire & Cas. Co.***, 925 P.2d 1279 (Utah App. 1996), as indirect authority for this view. We do not believe ***Taylor*** supports the result Pacific seeks, however. ***Taylor*** specifically limited its rationale to the facts before it and cautioned that a contrary approach might prove appropriate in other cases. ***Taylor***, 925 P.2d at 1283.

In addition, ***Taylor*** distinguished between factual allegations and legal theories. In contrast, Pacific asks us to distinguish here between two sets of factual allegations (1984 failure to file *lis pendens* and 1989-91 failure to conduct discovery) and conclude one necessarily taints the other. Given ***Taylor***'s express limitations, it alone will bear the weight of that kind of analysis.

As secondary support, Pacific offers ***Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.***, 855 P.2d 1263 (Cal. 1993), which provides a strikingly similar factual setting. Pacific asks us to apply reasoning similar to that employed by the California court.

However, ***Bay Cities Paving*** is not binding authority in Utah, and a number of factual and legal characteristics of the case render it readily distinguishable. First and foremost, the ***Bay Cities Paving*** court based its holding on specific language contained in the insurance policy before it. Second, in ***Bay Cities Paving***, coverage itself was not in dispute; rather, the parties disputed the amount to which the insured was entitled. Under these circumstances, the applicability of ***Bay Cities Paving*** is questionable. However, we do believe the district court was correct to grant ***Pacific*** summary judgment, although for reasons slightly different than those advanced by the court.

Shumate has alleged coverage for conduct which occurred during the effective period of the policy, namely the failure to conduct discovery and provide written argument on the issue of actual notice. We cannot choose to reject coverage of the Garrett judgment simply because Garrett based his claim in part on Shumate's negligence in 1984. Pacific has failed to provide a binding legal rule which would allow such an arbitrary result. Our answer lies in interpreting the language of the policy.

The thrust of Shumate's claim is, because the events had not occurred, he could not have known or reasonably foreseen that those acts, errors, or omissions might form the basis of a claim. This analysis is erroneous. The error lies in the assumption that Shumate's knowledge with respect to the "acts, errors, or omissions" in section III(B) must be limited to events that had already occurred. The policy applies to any acts, errors, or omissions occurring after the retroactive date, provided Shumate did not know, or could

not have reasonably foreseen that the acts, errors, or omissions for which he seeks coverage might form the basis of a claim. As of October 28, 1988, when Shumate wrote his letter to Henderson, Shumate knew the construction lender had attacked the validity of Garrett's lien, based on Shumate's failure to file a *lis pendens* in 1984. In the letter, Shumate also acknowledges, given the failure to file a *lis pendens*, he and Henderson would need to show actual notice to survive the requirements of section 38-1-11. In short, as of October 28, 1988, *prior to the effective date of the insurance policy*, Shumate knew that a failure to prove actual notice would kill Garrett's lien. Given this knowledge, Shumate knew or reasonably could have known, that a failure to prove actual notice "might be expected to be the basis of a claim." That such a failure had not yet occurred is irrelevant for our purposes. The focus of our section III(B) inquiry must be on Shumate's knowledge as the policy language provides.

This reasoning and result is consistent with the probable expectations of the parties. Shumate could not reasonably expect he would be covered for, and Pacific would not have agreed to cover, his failure to perform a specific legal act that Shumate knew needed to be performed, that was necessary to correct an existing error in Shumate's representation, and that, if not performed, would directly result in the loss of a client's claim. As of the effective date of the policy, Shumate knew or reasonably could have known that a failure to follow up on the actual notice portion of Garrett's lien case "might be expected to be the basis of a claim."

This disposition renders any remaining issues moot. The district court's grant of summary judgment for Pacific is **AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge